Charles **FRAZIER,** Plaintiff–Appellant,

v.

Thomas A. **COUGHLIN, III,** Commissioner of the Department of Corrections for New York; **Robert Mitchell,** Superintendent of Eastern New York Correctional Facility; **George Ellison,** Lieutenant, an Employee of the New York State Department of Corrections for New York State; **John Doe,** and/or **Jane Doe,** Employee of the New York State Department of Corrections; **R.J. Cunningham,** Deputy Superintendent of Security at Eastern New York Correctional Facility; **Louis F. Mann,** Superintendent of Shawangunk Correctional Facility;

**Robert Cunningham,** Senior Counselor and Program Coordinator for The Close Supervision Unit (CSU) at Shawangunk Correctional Facility; **John Doe, II,** A Lieutenant at Shawangunk Correctional Facility, Defendants–Appellees.

No. 562, Docket 94–2768.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1996.

Decided April 10, 1996.

314

Charles Frazier, Wallkill, NY, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (Peter H. Schiff, Deputy Solicitor General, Peter R. Crary, Assistant Attorney General, Patrick

Barnett–Mulligan, Assistant Attorney General, on the brief), for Defendants–Appellees.

Before JACOBS, LEVAL and PARKER, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Charles Frazier, an inmate in the custody of the New York State Department of Correctional Services, appeals from a decision of the United States District Court for the Northern District of New York (McCurn, *J.*) that granted judgment as a matter of law in favor of the defendants pursuant to Fed.R.Civ.P. 52(c). Frazier's *pro se* complaint, made pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, alleges that the defendants deprived Frazier of his right to procedural due process under the Fifth and Fourteenth Amendments by, *inter alia*, (i) depriving him of the opportunity to challenge his pre-hearing confinement to the prison's Special Housing Unit; (ii) placing him in the prison's Close Supervision Unit based on erroneous charges; (iii) improperly conducting the hearing at which it was determined to place him in the Close Supervision Unit; and (iv) placing erroneous information in his prison file. Frazier also asserts a claim against defendant Coughlin, the Commissioner of the Department of Corrections, for failing to intervene on his behalf. A bench trial was conducted, and at the close of the evidence the district court dismissed all of Frazier's claims.

We affirm the dismissal of Frazier's claims that his assignment to the Close Supervision Unit and the Special Housing Unit violated his constitutional rights, on the ground that Frazier has no protected liberty interest in remaining in the general prison population under *Sandin v. Conner*, ── U.S. ──, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). We affirm the dismissal of Frazier's other claims for the reasons provided by the district court.

**BACKGROUND**

On February 28, 1992, staff members of the Eastern New York Correctional Facility discovered eight hacksaw blades concealed in an envelope addressed to inmate Frazier. Frazier was charged with violating prison regulations for being the intended recipient of those hacksaw blades. Defendant R.J. Cunningham, a deputy superintendent at Eastern New York, directed that Frazier be transferred (pending an investigation) from the general prison population to the Special Housing Unit (the "SHU"), a prison block that consists of several single-occupancy cells. An inmate in the SHU is confined to his cell for up to twenty-three hours per day, has limited recreational and vocational opportunities, and has little or no contact with other prisoners. According to New York prison regulations, an inmate may be assigned to the SHU while awaiting disposition of disciplinary proceedings. N.Y. Comp. Codes. R. & Regs. tit. 7, § 301.6(a)(1) (1995).

In a search of Frazier's cell that was conducted later that day, corrections officers found various items of contraband. Charges were filed against Frazier for violating prison regulations against the possession of contraband. Defendant George Ellison, a lieutenant at Eastern New York, set a date for a hearing on the charges pertaining to the hacksaw blades and the contraband, and determined that Frazier should remain in the SHU pending the hearing. On March 2, 1992, Frazier was transferred from the SHU at Eastern New York to the SHU at Shawangunk prison.

A hearing on the charges against Frazier was held on March 6, 1992, and was concluded on March 10, 1992. Frazier was found guilty of the charges pertaining to the contraband, but not guilty of the charges relating to the hacksaw blades. Frazier was penalized by 30 days of confinement to his cell (not the SHU) and 30 days loss of commissary, recreation, package and phone privileges. That sentence was made retroactive to February 28.

On the day the hearing concluded, Superintendent Mann of the Shawangunk prison directed that Frazier be moved from the SHU to a cell in the Close Supervision Unit (the "CSU"). The CSU is less restrictive

than the SHU. An inmate assigned to a cell in the CSU is ineligible for certain jobs, but otherwise enjoys the same conditions and privileges as a prisoner in the general population. The CSU employs greater security measures than the general population prison units, and houses inmates who have a history of violating prison rules. A prisoner may be placed in the CSU for disciplinary reasons, but may also be placed there at the discretion of the commissioner or superintendent. Shawangunk's rules expressly state that a hearing is *not* required for placement in the CSU.

On March 26, 1992, the CSU Screening Committee, chaired by defendant Robert Cunningham, held a hearing at which Frazier appeared and testified.[1] The committee recommended that Frazier remain in the CSU. On April 23, 1992, Frazier appealed that decision to Superintendent Mann.[2] Around that date, all evidence concerning the hacksaw blades and the resulting charge against Frazier was expunged from Frazier's prison record, pursuant to his request. In a letter dated May 26, 1992, Frazier requested that defendant Thomas A. Coughlin, the Commissioner of the New York Department of Corrections, intervene on his behalf in his appeal of his assignment to the CSU. In a decision dated May 28, 1992, Mann denied Frazier's appeal. In a letter dated June 19, 1992, Coughlin informed Frazier that he was deferring to Mann's decision. On December 4, 1992, Frazier filed his complaint in district court. On January 28, 1993, Frazier was removed from the CSU and placed in the general prison population.

On December 6 and 7, 1994, a bench trial was held before Judge McCurn. (Frazier

was assisted by stand-by counsel.) At the close of the plaintiff's case, the district court granted judgment as a matter of law, pursuant to Fed.R.Civ.P. 52(c), in favor of defendants Ellison, Mitchell and Raymond Cunningham. At the close of the defendants' case, the district court granted judgment as a matter of law in favor of defendant Coughlin. The district court reserved judgment on the remaining claims. On December 8, the district court issued an oral decision granting judgment as a matter of law on the remaining claims to the remaining defendants.[3]

## DISCUSSION

On appeal, Frazier contends that the district court erred in granting the defendants judgment as a matter of law because: (i) Frazier's pre-hearing confinement to the SHU for twelve days violated his right to procedural due process; (ii) he had a constitutionally protected liberty interest in remaining free from assignment to the CSU; (iii) the hearing held by the CSU Screening Committee violated his right to procedural due process; (iv) he had a protected liberty interest in expunging any erroneous information from his prison records; and (v) the district court was required by Fed.R.Civ.P. 52 to issue findings of fact or conclusions of law in support of its decision.[4] We will separately address each of these claims.

### A. *Pre–Hearing Confinement.*

At the close of the plaintiff's case, the district court found that New York prison regulations do not require that a prisoner who is awaiting disciplinary proceedings be afforded a hearing prior to being placed in a Special Housing Unit. The court therefore held that Frazier had no protected liberty interest in remaining free from confinement

---

1. According to Shawangunk's rules, the CSU Screening Committee may recommend to the superintendent that an inmate be assigned to the CSU.

2. Frazier claimed at trial that he did not receive a copy of the decision of the CSU Screening Committee until April 23.

3. The district court also determined, as an alternative ground for its decision, that defendants

Mann and Robert F. Cunningham were entitled to qualified immunity.

4. Frazier also contests the district court's decision to dismiss the claims against Mann and Robert Cunningham on the alternative ground that they were entitled to qualified immunity. Because we affirm dismissal of those claims on other grounds, we do not reach the issue of qualified immunity.

in the SHU, and dismissed Frazier's claim that he was deprived of procedural due process. In looking to state regulations, the district court apparently applied the standard established in *Hewitt v. Helms,* 459 U.S. 460, 470–71, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983), for determining whether a prisoner has a protected liberty interest.

■ Subsequent to the district court's decision, the Supreme Court abandoned the framework established in *Hewitt* for analyzing whether a prisoner who is subjected to disciplinary confinement has been deprived of a liberty interest. *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see also Samuels v. Mockry,* 77 F.3d 34, 36–38 (2d Cir. 1996) (discussing *Hewitt* and *Sandin* ) (*per curiam* ); *Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995) (same). *Hewitt* looked to state law and regulations to determine the parameters of a prisoner's protected liberty interests. The Supreme Court in *Sandin*

> recognize[d] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

—— U.S. at ——, 115 S.Ct. at 2300 (citations omitted). *Sandin* held that the respondent's confinement in a segregated housing unit for thirty days, "though concededly punitive, does not present a dramatic departure from the basic conditions of [his] indeterminate sentence." *Id.* at ——, 115 S.Ct. at 2301. *Sandin* applies retroactively to this case. *See Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 95–97, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (a rule of federal law "must be given full retroactive effect").

■ As we recently recognized, "*Sandin* may be read as calling into question the continuing viability of our cases holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation." *Rodriguez,* 66 F.3d at 480. And nothing in *Sandin* suggests that a protected liberty interest arises in the absence of a particular state regulation or statute that (under *Hewitt* ) would create one.[5] To prevail, Frazier must establish both that the confinement or restraint creates an "atypical and significant hardship" under *Sandin,* and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint.

■ The extensive fact-finding of the district court permits us to measure Frazier's SHU claim by the standard of *Sandin.* Under that standard, Frazier has failed to demonstrate a significant deprivation of a liberty interest because he has not shown that the conditions of his confinement in the SHU were dramatically different from the "basic conditions of [his] indeterminate sentence." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Frazier was confined in the SHU for approximately twelve days while awaiting the disposition of disciplinary proceedings. While in the SHU, Frazier was denied certain privileges that prisoners in the general population enjoy. But, as in *Sandin,* the conditions of that confinement fell "within the expected parameters of the sentence imposed by a court of law." *Id.* And the extensive proof adduced at trial concerning the conditions of Frazier's confinement in the SHU demonstrate that such confinement did not amount to the "type of atypical, significant deprivation in which [New York] might conceivably create a liberty interest." *Id.* Furthermore, Frazier points to no proof that might establish that "the State's action will inevitably affect the duration of his sentence." *Id.* at ——, 115 S.Ct. at 2302. Thus, Frazier cannot establish a protected liberty interest in remaining in the general prison population,

5. The Supreme Court in *Sandin* stated that its decision "does not technically require us to overrule any holding of this Court." —— U.S. at —— n. 5, 115 S.Ct. at 2300 n. 5. The Court noted that its decision "only abandons an approach that in practice is difficult to administer and which produces anomalous results." *Id.*

and dismissal of his procedural due process claim was proper.

### B. *Close Supervision Unit Confinement.*

Frazier next contends that the district court erred in holding that he had no liberty interest under *Hewitt* in remaining free from confinement in the CSU. Although we examine this issue in light of *Sandin,* we arrive at the same result as the district court.

 It is true that Frazier remained in the CSU for eleven months before being assigned to the general prison population at Shawangunk. But inmates in the CSU are confined to their cells for the same amount of time per day as inmates in the general prison population. Moreover, it was undisputed at trial that the only substantive differences between confinement in the CSU and in the general prison population are (i) that prisoners in the CSU are ineligible for certain prison jobs, and (ii) that additional corrections officers may be assigned to the CSU. Frazier's contention that, while confined in the CSU, he was constitutionally deprived of a job in the prison's laundry is without merit, since in New York a prisoner has no protected liberty interest in a particular job assignment. *See Cooper v. Smith,* 99 A.D.2d 644, 471 N.Y.S.2d 932, 933 (4th Dep't), *aff'd,* 63 N.Y.2d 615, 479 N.Y.S.2d 519, 468 N.E.2d 701 (1984). In any event, testimony adduced at trial indicated that Frazier was ineligible to work in the laundry because of previous infractions of prison rules. As to the assignment of additional corrections officers, there is no claim here that New York confers upon inmates a protected liberty interest in controlling the number and deployment of corrections personnel at various places in the prison. Thus, the evidence at trial establishes that Frazier's confinement to the CSU imposed on him no "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300.

 Frazier also contends that the hearing conducted by the CSU Screening Committee lacked necessary procedural protections, and that he was not provided with advance notice of the hearing. However, since Frazier failed to establish that he had a protected liberty interest in remaining free from confinement in the CSU under *Sandin,* he cannot assert a claim that he was denied due process in the procedures that confined him there.

### C. *The Allegedly Erroneous Information.*

Frazier argues that he has a right, conferred by New York prison regulations, New York case authority, and the Due Process Clause, to have his prison records remain free of erroneous information. We do not reach the issue of whether Frazier has such a right, because we agree with the district court that the information contained in Frazier's prison file is accurate.

 Frazier contends that the charges pertaining to the hacksaw blades, which were expunged from his prison records on March 19, 1992, were later reintroduced into his records through two memoranda written by Shawangunk prison officials. But, as the district court found, one of those memoranda accurately states that Frazier's transfer from Eastern New York prison to Shawangunk was based on his "*suspected* involvement in introducing escape paraphernalia" (the hacksaw blades). Similarly, the other memorandum accurately states that "while [Frazier was] housed at Eastern C.F.[,] escape paraphernalia was sent into the facility in a package destined for [Frazier]." These statements do not refer to the charges that were lodged against Frazier in connection with the hacksaw blades. Moreover, on appeal Frazier does not contend that the above statements are inaccurate. Thus, assuming *arguendo* that Frazier has a protected interest in ensuring that his prison records remain accurate, he has not shown that his file contains any inaccuracies, and his claim was properly dismissed.

### D. *Fed.R.Civ.P. 52.*

 Rule 52 requires that a district court, in entering judgment as a matter of law, "shall find the facts specially and state separately its conclusions of law thereon." Fed. R.Civ.P. 52(a). Frazier contends that the district court failed to comply with that requirement. At the close of the plaintiff's

evidence, however, the district court made extensive findings of fact regarding New York regulations and the defendants' role in placing Frazier in the SHU. At the close of trial, the court made further findings of fact regarding Shawangunk's prison regulations, Frazier's prison record and conditions in the Close Supervision Unit. On December 8, 1994, the district court issued a thorough oral opinion that sets forth the legal basis for granting the defendants judgment as a matter of law. These findings are entirely sufficient to support the dismissal of these claims. Frazier's claim that the district court did not comply with Rule 52 is therefore meritless.

## CONCLUSION

The judgment of the district court is affirmed.