Roland BREWTON, Plaintiff,

v.

F. HOLLISTER, A Captain of Security
at Orleans Correctional Facility,
Defendant.

No. 95–CV–17C.

United States District Court,
W.D. New York.

Nov. 13, 1996.

Plaintiff Pro Se.

Dennis C. Vacco, Attorney General of the State of New York (Peter B. Sullivan, Assistant Attorney General, of counsel), Buffalo, NY, for Defendant.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff Roland Brewton, an inmate at Orleans Correctional Facility ("Orleans") at all times material to this claim, brings this action under 42 U.S.C. § 1983, alleging that defendant Captain Frank Hollister violated his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. He claims that he was wrongfully confined to the Special Housing Unit ("SHU") after defendant conducted a constitutionally defective disciplinary hearing. He insists that under the Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R.") he has a protected liberty interest in remaining in the facility's general population.

On May 1, 1995, this court dismissed plaintiff's claims against three of the defendants named in the original complaint for failure to allege sufficient facts upon which relief could be granted. Item 3. The claim against Sergeant Schwartz was dismissed since his alleged misbehavior did not rise to the level of a constitutional violation. The claims against New York Department of Corrections Commissioner Philip Coombe and Superintendent of Orleans Sally Johnson were dismissed because the complaint failed to allege that either was personally involved in a constitutional deprivation or that they had actual or constructive notice of a constitutional deprivation which they failed to terminate.

On August 16, 1995, defendant Hollister filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for its failure to state a claim upon which relief can be granted. Item 5.

After both sides submitted memoranda of law stating their arguments regarding the motion, this court directed the parties to submit additional briefs regarding their positions on the impact of *Frazier v. Coughlin,* 81 F.3d 313 (2d Cir.1996), in which the Second Circuit applied *Sandin v. Conner,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), to disciplinary confinements imposed within the New York prison system, on the present case. Item 9. The parties were ultimately given until September 13, 1996 to file such briefs.

On July 22, 1996, defendant submitted a supplemental memorandum pursuant to the court's request. Item 15. Defendant also filed an affidavit made by Anthony Annucci, Deputy Commissioner and Counsel for the New York State Department of Correctional Services, in support of his pending motion to dismiss. Item 13. This affidavit describes the operation of correctional facilities, including the relative treatment of inmates housed in the general population with those housed in SHUs. It notes that the Commissioner has broad discretion to promulgate specific regulations within very broad parameters governing the operation of correctional facilities and that there is no New York statute that requires an inmate to live in any particular housing unit. *Id.,* ¶¶ 2–3. Plaintiff never submitted any papers regarding his position on the applicability of *Frazier* to this case. Therefore, it appears that this action could be dismissed because of plaintiff's failure to proceed. The court, however, will turn to the merits of the motion.

Thus, the court now considers defendant's motion to dismiss in light of the Supreme Court's decision in *Sandin* and the Second Circuit's decision in *Frazier.* Rule 12(b) of the Federal Rules of Civil Procedure provides that if the court considers matters outside the complaint in ruling on a motion pursuant to 12(b)(6), "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See Carter v.*

*Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972). A District Court has the power to grant summary judgment *sua sponte* where neither party has moved for such relief, provided that all parties are given advance notice that the court plans on converting the motion to dismiss to a motion for summary judgment. *Reynolds v. Mercy Hospital,* 861 F.Supp. 214, 218 (W.D.N.Y.1994). The standard for determining the adequacy of notice of conversion is whether the losing party "should have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 592 (2d Cir.1993) (quoting *In re G. & A. Books,* 770 F.2d 288, 295 (2d Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986)). Because this court directed both parties to submit additional briefs concerning the impact of the *Frazier* decision on the present case, Item 9, and gave the parties approximately four months to submit these materials, the parties had both notice of the possibility that the court would treat defendant's motion as one for summary judgement and a full and fair opportunity to present supporting or opposing materials. Consequently, this court is presently treating defendant's motion as one for summary judgment pursuant to Rule 56.

### FACTS

On July 10, 1994, while incarcerated at Orleans, plaintiff was confronted by Sergeant R. Schwartz and an unknown correction officer, frisked and handcuffed, and taken to the facility's SHU. Item 1, ¶ 1.[1] Plaintiff alleges that throughout the whole confrontation the officers verbally harassed him and they failed to respond to plaintiff's questions as to why he was being taken to the SHU. Once at the unit, the SHU officers explained its policies and procedures, conducted a routine

strip frisk of plaintiff, and escorted plaintiff to a cell. *Id.,* ¶¶ 2–3.

The following day, plaintiff was served with a Tier–III Misbehavior Report, written by Sergeant Schwartz, charging him with two violations of rules for inmate conduct. The report specified that plaintiff had violated rule 101.10 (assault on another inmate) and 104.10 (violent conduct).[2] *Id.,* ¶ 4. Plaintiff was told that there would be a hearing regarding these charges three days later and the policies and procedures governing Tier III hearings were explained to him. Plaintiff requested that inmate Kim Simmiona appear as a witness at this hearing. *Id.*

On July 14, 1994, plaintiff appeared before defendant Hollister, in his capacity as hearing officer, on these charges. Before the proceeding began, defendant explained the hearing procedures to plaintiff. Plaintiff alleges that defendant directly asked whether plaintiff was guilty or innocent, and after plaintiff responded that he was innocent defendant stated "yeah, yeah, yeah, that's what all of you say, none of you will ever admit you're guilty." *Id.,* ¶ 5.

Following this exchange, defendant started the tape recorder and commenced the proceeding. Defendant explained the hearing procedures on the record and then asked plaintiff to give his explanation of the events in question. *Id.* Inmate Kim Simmiona then testified as per plaintiff's request. *Id.* Defendant adjourned the hearing in order to locate Sergeant Schwartz so that he could testify. He explained that the hearing would resume as soon as Sergeant Schwartz was located or any other witnesses were selected to testify. *Id.* Defendant also told plaintiff that the inmate who had accused plaintiff of assaulting him would not be present at the hearing and plaintiff would not have an opportunity to cross-examine him pursuant to the "institutional safety and security guidelines." *Id.,* ¶ 6.

The hearing resumed on July 19, 1994. Plaintiff alleges that before the proceedings

---

**1.** The paragraphs in the complaint are not separately numbered. There are ten paragraphs in the plaintiff's statement of claim. For purposes of this order, the court has assigned numbers to them in the order in which they appear.

**2.** These violations are contained within 7 N.Y.C.R.R. § 270.2(B).

went on the record, defendant stated, "I want to get this hearing done today because I am tired and this is going nowhere." *Id.,* ¶ 7. Once the proceeding formally recommenced, defendant advised plaintiff that Sergeant Schwartz was not available to testify, apparently because he was on vacation. *Id.* Since there were no other witnesses to testify, defendant proceeded to reach a determination, by which he found the plaintiff guilty of the charges and imposed a penalty of 180 days in SHU with loss of privileges, and recommended loss of ninety days of good time. *Id.* Defendant asked if plaintiff had any comments to make in response to the disposition, and plaintiff remained silent. *Id.*

On September 27, 1994, this determination was reversed on administrative appeal. *Id.,* ¶ 10. Plaintiff was released from SHU, all of his privileges were restored, and all references to the hearing determination were ordered expunged from his record. *Id.* At the time of his release, plaintiff had spent a total of seventy-four days in SHU (nine days before the completion of his disciplinary hearing and sixty-five days following defendant's determination). Plaintiff alleges that while he was confined in SHU he was deprived of many of the privileges available to other SHU inmates. Specifically, he claims that he was denied a meal on one occasion and medical treatment on three occasions. *Id.,* ¶¶ 8–9.

On January 2, 1995, plaintiff brought this action claiming that these events violated his constitutional rights under both the Eighth and Fourteenth Amendments. He seeks money damages.

### DISCUSSION

 Summary judgment is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Citizens' Bank v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). When deciding a motion for summary judgment, the court must "resolve all ambiguities and inferences ... in the light most favorable to the party opposing the motion." *Shockley v. Vermont State Colleges,* 793 F.2d 478, 481 (2d Cir.1986) (citations omitted). If based on the submissions to the court, no rational fact-finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). "The function of the court is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial." *Carter v. Carriero,* 905 F.Supp. 99, 102 (W.D.N.Y.1995). Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials." *Capital Imaging v. Mohawk Valley Medical Associates,* 996 F.2d 537, 541 (2d Cir.1993).

### I. *Due Process Claim*

 In order to succeed on his due process claim, plaintiff must show that he has a protected liberty interest, and if so, that he was deprived of sufficient process to protect that interest. In *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court reexamined the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause. Specifically, the Court explained that:

> these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.

*Id.* at ——, 115 S.Ct. at 2300 (emphasis added). The inmate in *Sandin* was charged under Hawaii prison regulations with "high misconduct" punishable by confinement in the Special Holding Unit. Following a disciplinary hearing, plaintiff was sentenced to thirty days confinement. The Court held that the inmate's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301. The Court noted that the State expunged the inmate's disciplinary record with respect to the more serious charges against him; consequently,

his confinement "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Id.* Finding that no liberty interests were implicated, the court dismissed plaintiff's claim.

In *Frazier v. Coughlin,* 81 F.3d 313 (2d Cir.1996), the Second Circuit applied *Sandin* to disciplinary confinements within New York's prison system. The court explained that to prevail under *Sandin,* an inmate "must establish both that the confinement or restriction creates an 'atypical and significant hardship' . . . and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement." *Id.* at 317. The periods of confinement at issue in *Frazier* were ten days of prehearing confinement in SHU and approximately eleven months in the Close Supervision Unit ("CSU"). Although confinement in CSU is less restrictive than in SHU, prisoners in CSU are denied privileges available to inmates in the general population. The *Frazier* court found that under the standards of *Sandin,* the plaintiff failed to demonstrate a significant deprivation of a liberty interest because he did not show that the conditions of confinement in either SHU or CSU imposed on him an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* at 317–18. Because it found that the inmate had not suffered the requisite hardship, the court did not address the question of whether New York State has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free of confinement in SHU or CSU.

The decision in *Frazier* was reached following a bench trial where the District Court was able to conduct extensive fact finding. During the trial, the court heard evidence regarding the nature of the plaintiff's confinement in SHU and CSU as compared to confinement in the general population. The court did not directly address the question of whether such a detailed factual showing is required before *Sandin* can be applied. That a trial was held in that case does not mean that one must be held in all cases.

Other courts have applied *Sandin* and dismissed plaintiffs' complaints without going to

trial. In *Carter v. Carriero,* 905 F.Supp. 99 (W.D.N.Y.1995), the court granted the defendant's motion for summary judgment with regards to the issue of whether the plaintiff had a protected liberty interest in not being assigned to SHU. The inmate in *Carter* served 270 days in SHU following a disciplinary hearing. The court noted that under New York prison regulations, inmates can be placed in SHU for disciplinary confinement, detention, administrative segregation, protective custody, keeplock confinement, and "for any other reason with the approval of the deputy commissioner for facility operations." *Carter,* 905 F.Supp. at 103 (citing 7 N.Y.C.R.R. §§ 301.1–7). The court found that neither the restrictions on privileges available to inmates in SHU nor the duration of the confinement in question imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.,* at 104. The court also held that "neither the New York prison regulations nor the Due Process Clause itself afforded plaintiff a protected liberty interest that would entitle him to the procedural protections he claims defendant violated." *Id.*

In the present case, plaintiff claims that he had a protected liberty interest in remaining in the Orleans general population and that his disciplinary hearing was constitutionally infirm. He spent a total of seventy-four days in SHU before his punishment was reversed on appeal (nine days before the completion of his hearing and sixty-five days following the determination). In his complaint, plaintiff specifically alleges that he was limited to one hour of recreation a day, that he was denied a meal on one occasion, and that he was denied medical treatment on three occasions. Item 1, ¶¶ 8–9. He also alleges that some of his personal property was withheld for a number of days. *Id.,* ¶ 3. Defendant's supporting affidavit describes in detail the nature of the plaintiff's confinement in SHU and plaintiff has failed to challenge this evidence. Item 13. The affidavit establishes that it is not at all unusual for inmates to spend lengthy periods of time in SHUs for disciplinary reasons. *Id.,* ¶ 12. The affidavit also compares the restrictions experienced by inmates in SHU as compared to inmates in the general population.

■ In *Carter*, the court found that the SHU restrictions on law library access, educational opportunities, visitation, telephone use, personal property, employment eligibility, work release, and furloughs did not amount to atypical and significant hardship, even when the inmate was confined to SHU for 270 days. *Carter*, 905 F.Supp. at 105. The plaintiff in this case has not pled comparable restrictions on privileges. If Carriero's 270 days in SHU were found not to be dramatically different from the ordinary incidents of prison life, the court cannot see how the seventy-four days endured by the plaintiff in this case could implicate a protected liberty interest. In *Frazier*, the court found that twelve days in SHU and approximately eleven months in CSU did not amount to a sufficient hardship to implicate a protected liberty interest. *Frazier*, 81 F.3d at 317. Even though the latter confinement was less restrictive than SHU, the eleven months of confinement was considerably more than the seventy-four days experienced by the plaintiff in this case. Finally, as was the case in *Sandin*, the state of New York expunged plaintiff's disciplinary record following the reversal of the misconduct determination. The Supreme Court's opinion suggests that such an internal remedial measure reduces the harshness of the original disciplinary action.

■ Having found no protected liberty interest, this court does not consider whether plaintiff has a claim based on defendant's failure to provide adequate process at the disciplinary hearing. The court notes that after *Sandin* and *Frazier*, the appropriate remedy for violation of hearing regulations, where the result is not an atypical, significant hardship, is a question for the state courts.

## II. *Eighth Amendment Claim*

■ In order to succeed on his Eighth Amendment claim, plaintiff must prove that the conditions of confinement can properly be termed "barbarous" or "shocking to the conscience." *Sostre v. McGinnis*, 442 F.2d 178, 191 (2d Cir.1971), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). Segregated confinement does not itself violate the Eighth Amendment. *Id.* at 192.

The *Sostre* court found that the plaintiff's confinement in a punitive segregation facility for twelve months and eight days, in which he was isolated from human conduct, severely restricted in opportunities for exercise, limited to one shower per week, restricted from buying books, magazines or newspapers, limited in his access to the prison library, restricted in the ability to receive food packages from the outside, and limited at meals to only one portion of food and a different dessert than that given to the general population, did not violate basic human dignity. The court also found that it should not second-guess the prison authorities on their judgment that the punishment was a reasonable means of maintaining discipline and order. *Id.* at 191.

■ In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court explained that there are two prerequisites for an Eighth Amendment violation.

First, the deprivation alleged must be, objectively, "sufficiently serious," ... a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities".... [T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm ... [Second,] a prison official must have a "sufficiently culpable state of mind." ... In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

*Id.* at 824, 114 S.Ct. at 1977. In order for deliberate indifference to be found, the official must have "know[n] of and disregard[ed] an excessive risk to inmate health or safety; the official must [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] draw[n] the inference." *Id.* at 837, 114 S.Ct. at 1979.

■ Under either *Farmer* or *Sostre*, plaintiff's Eighth Amendment claim fails. Plaintiff has not alleged facts that would support the conclusion that the conditions in the Orleans SHU were sufficiently barbarous or that there was a substantial risk of serious

harm. The most serious allegations plaintiff has made are that he was deprived of a meal on one occasion and that he was deprived of medical care on three occasions. He has not alleged any of the deprivations experienced by the plaintiff in *Sostre* or anything conceivably worse. Even if the court were to find that he has alleged sufficient facts to warrant further fact-finding on the severity of the conditions in SHU, he has not alleged that defendant or anyone else at Orleans had the requisite culpable state of mind to support an Eighth Amendment claim.

### *CONCLUSION*

For the foregoing reasons, this court grants summary judgment in favor of defendant. The complaint is dismissed, and judgment shall enter for defendant.

For the reasons set forth above, I hereby certify that any appeal from this order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a), and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

So ordered.