Andre PORTER, Plaintiff,

v.

Mr. Thomas A. COUGHLIN, III, Commissioner, New York State Department of Correctional Services, Frank E. Irvin, Superintendent, Wende Correctional Facility; Acting Captain Walker, Wende Correctional Facility; Mr. Donald Selsky, Commissioner Designee Director of Disciplinary Hearings; and John P. Keane, Superintendent of Sing–Sing Correctional Facility, Defendants.

No. 95–CV–598C(F).

United States District Court,
W.D. New York.

May 7, 1997.

98

Andre Porter, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York (Jerry McGrier, Sr., Assistant Attorney General, of counsel), Buffalo, NY, for Defendants.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

Plaintiff Andre Porter was, at the time he filed his complaint, an inmate confined to Sing–Sing Correctional Facility (Item 1, ¶ 5).

At all relevant times herein, defendant Thomas A. Coughlin, III was the Commissioner of the New York State Department of Correctional Services ("DOCS"); defendant Frank E. Irvin was Superintendent of Wende Correctional Facility ("Wende"); defendant Walter was Acting Captain at Wende; defendant Donald Selsky was Director of Special Housing/Inmate Disciplinary Programs for DOCS; and defendant John P. Keane was Superintendent of Sing–Sing Correctional Facility.

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights as protected by the Eighth and Fourteenth Amendments, claiming that he has suffered cruel and unusual punishment and deprivation of liberty without due process. Specifically, plaintiff contends that defendants violated his constitutional rights by denying him adequate process at an April 14, 1993, Superintendent's Hearing and in his continuous confinement to the Special Housing Unit ("SHU"). He contends that his confinement to SHU has been indefinite, without a mechanism for periodic review, and that this constitutes a significant and atypical deprivation of liberty.

On September 25, 1996, defendants moved for summary judgment (Item 23). In support of their motion, defendants submitted affidavits prepared by Assistant Attorney General Jerry McGrier, Sr. (Item 27), defendant Donald Selsky (Item 26), and Anthony Annucci, Deputy Commissioner and Counsel for DOCS (Item 28), a statement of undisputed facts (Item 25), and an accompanying memorandum of law (Item 24). In response, plaintiff has filed a memorandum of law and a statement of undisputed facts (Items 30 and 31).

### FACTS

On May 28 and 29, 1991, there was an inmate uprising in the A–Block yard of the Southport Correctional Facility ("Southport"). Southport had recently been converted to a "central SHU." At that time, plaintiff was confined to Southport for disciplinary reasons unrelated to the present action. During this uprising, a group of inmates held five correction officers hostage.

Plaintiff admits to being present in the yard during the uprising, but he contends that he was not a participant. However, a bystander stated that he saw plaintiff holding a knife to one of the corrections officers. It is unclear whether plaintiff was ever charged with a weapons violation (Item 19, pp. 1–2). The day following the uprising, 53 prisoners were transferred to different prisons in the system. Plaintiff was transferred to Great Meadow Correctional Facility (*Id.*, p. 2).

On May 30, 1991, plaintiff was served with a misbehavior report. Plaintiff was charged with two DOCS Rule Book violations: Rule 104.10 (riot takeover) and Rule 104.11 (violent conduct) (Item 31, exhibit A; Item 19, p. 2). At a Superintendent's Hearing, plaintiff was found guilty of violations under these rules and he was sentenced to 36 months in SHU. This conviction was affirmed by defendant Selsky in August 1991. Plaintiff challenged the hearing officer's decision by filing an Article 78 petition in state court. While this petition was pending, plaintiff was transferred to Wende (Item 19, p. 2; Item 12, ¶¶ 15–18).

On December 1, 1992, plaintiff was indicted under New York Penal Law § 205.25 for the crime of promoting prison contraband in the first degree for his involvement in the May 1991 incident at Southport. On December 22, 1992, he was found guilty in the Chemung County Court on this charge (Item 19, p. 3; Item 13, Exhibit B). The court sentenced plaintiff to serve 3 to 6 years, consecutive to plaintiff's unexpired sentence of 4 to 12 years for robbery. *See People v. Porter*, 220 A.D.2d 884, 632 N.Y.S.2d 336 (3 Dept.1995).

On February 24, 1993, plaintiff began serving a 180–day SHU sentence as punishment for committing an unhygienic act (DOCS Rule 118.22). This sentence was the result of an incident that had occurred on February 7, 1993, for which he had a disciplinary hearing on February 14, 1993 (Item 1, ¶¶ 17–18; Item 25, ¶ 10; Item 31).

On March 11, 1993, the Appellate Division, Third Department, ruled on plaintiff's Article 78 petition and annulled plaintiff's June 1991 Superintendent's Hearing for charges that he

had violated DOCS Rules 104.10 and 104.11 by participating in the Southport riot. The court based its decision on its findings that the hearing officer had failed to make certain documents available to plaintiff. The court remanded the matter for a new hearing; however, it is unclear whether a new hearing was ever held on these charges (Item 19, p. 3).

On April 5, 1993, Wende Corrections Counselor Paul Mecca filed a new misbehavior report charging plaintiff with a violation of DOCS Rule 1.00 (Penal Law Offense) for his involvement in the May 1991 Southport riot. The report referred to plaintiff's indictment and conviction of promoting prison contraband by the Chemung County Court in December 1992 (Item 19, p. 3; Item 31, Exhibit J).

On April 14, 1993, Acting Captain Walter held a Tier III Superintendent's Hearing to review plaintiff's newest charge. Plaintiff entered a plea of not guilty for the charge of promoting prison contraband in the first degree for the May 1991 incident and requested witnesses. From the hearing record, it appears that no witnesses testified, and plaintiff did not sign the hearing record sheet. It is not clear whether plaintiff was unable to sign the hearing record sheet or he refused to do so. Plaintiff was found guilty at the hearing and was sentenced to five years in the SHU (Item 27).

Plaintiff appealed the hearing decision, claiming that the hearing was not timely, documentary evidence was not made available, witnesses were not called, and an electronic recording was not made. In May 1993, defendant Selsky affirmed the hearing decision. On June 22, 1993, defendant Selsky reduced plaintiff's sentence to 36 months in SHU (Item 19, p. 4; Item 26; Item, 27).

On August 23, 1993, plaintiff began serving his 36–month SHU sentence on this charge. He resided in SHU from August 23, 1993 to May 23, 1996. The remaining three months were held in suspension (Item 25, ¶ 14).

On July 15, 1994, the Appellate Division, Fourth Department, held that plaintiff's April 1993 disciplinary hearing did not raise double jeopardy concerns with respect to the initial disciplinary proceeding immediately following the Southport riot. *Porter v. Irvin,* 206 A.D.2d 925, 615 N.Y.S.2d 953 (4 Dept. 1994). Although it mentioned that plaintiff had been found guilty of promoting prison contraband after a trial in Chemung County Court, the court did not comment on whether the April 1993 disciplinary hearing raised any double jeopardy concerns with respect to that criminal trial.

On October 19, 1995, the Appellate Division, Third Department, affirmed plaintiff's December 1992 criminal conviction holding that (1) the evidence was sufficient to support a conviction, and (2) his sentence was not unduly harsh and excessive. *People v. Porter,* 220 A.D.2d 884, 632 N.Y.S.2d 336 (3 Dept.1995).

### DISCUSSION

Summary judgment is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Citizens Bank v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). When deciding a motion for summary judgment, the court must "resolve all ambiguities and inferences ... in the light most favorable to the party opposing the motion." *Shockley v. Vermont State Colleges,* 793 F.2d 478, 481 (2d Cir.1986) (citations omitted). There is no genuine issue of material fact if, based upon the submissions to the court, no rational fact-finder could find in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). It is the function of the court to determine whether there is a genuine issue for trial, not to determine the truth of the matter. *Carter v. Carriero,* 905 F.Supp. 99, 102 (W.D.N.Y.1995) (Skretny, J.). When used properly Rule 56 is a "vital procedural tool to avoid wasteful trials." *Capital Imaging v. Mohawk Valley Medical Associates,* 996 F.2d 537, 541 (2d Cir.1993).

### I. *Due Process Claim*

■ "In order to succeed on his due process claim, plaintiff must show that he has a protected liberty interest, and if so, that he was deprived of sufficient process to protect

that interest." *Brewton v. Hollister,* 948 F.Supp. 244, 248 (W.D.N.Y.1996) (Curtin, J.). This two-prong test was developed by the Supreme Court in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and has been applied consistently since this decision was announced.

In *Sandin,* the Supreme Court shifted the focus of the liberty interest inquiry from one based upon the language of a particular regulation to one based upon the nature of the deprivation. *Id.,* at ——, 115 S.Ct. at 2299. The reasons cited by the Court for the shift were two undesirable effects that had developed under the approach set forth under *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). First, the Court found that when the federal courts focused on the specific language of state regulations, this practice created a disincentive for states to codify prison management procedures. States could avoid creating liberty interests by having "scarcely any regulations." *Sandin,* 515 U.S. at ——, 115 S.Ct. at 2299. Second, the Court found that the *Hewitt* approach had led to the involvement of the federal courts in to the day-to-day management of state prisons. This practice was contrary to the expressed view that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin,* 515 U.S. at ——, 115 S.Ct. at 2299.

Under the approach announced by the Court in *Sandin,* a state may create liberty interests that are protected by the Due Process Clause of the Fourteenth Amendment,

> [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.,* at ——, 115 S.Ct. at 2300 (citations omitted). The Court further explained that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id.,* at ——, 115 S.Ct. at 2301. Significant to the Court was the fact that the disciplinary segregation in that case mirrored the conditions in administrative segregation and protective custody. However, the Court noted that they "ha[d] not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicate[d] constitutional liberty interests." *Id.*

Applying this new test to the facts of the case, the Court held that plaintiff's disciplinary sentence to segregated confinement for 30 days was not the type of "atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* Consequently, the Court dismissed the plaintiff's case on the first prong of the test and never reached the question of whether the plaintiff had received adequate process.

In *Frazier v. Coughlin,* 81 F.3d 313 (2d Cir.1996), the Second Circuit held that a prisoner had no protected liberty interest in remaining in the general prison population under *Sandin.* In *Frazier,* the plaintiff claimed that he had been deprived of due process when he was confined in SHU pending a disciplinary proceeding and then in the Close Supervision Unit ("CSU") for eleven months following the disciplinary hearing. Although confinement in CSU is less restrictive than in SHU, prisoners in CSU are denied privileges available to inmates in the general population. The court held that the plaintiff had failed to demonstrate a significant deprivation of a liberty interest because he did not show that the conditions of confinement in either SHU or CSU imposed on him an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.,* at 317–18 (quoting *Sandin,* 515 U.S. at ——, 115 S.Ct. at 2301). The court noted that the conditions plaintiff had experienced were "within the expected parameters of the sentence imposed by a court of law." *Frazier,* 81 F.3d at 317, (quoting *Sandin,* 515 U.S. at ——, 115 S.Ct. at 2301). Since the plaintiff could not establish a protected liberty interest in remaining in the general prison population, the court dismissed his procedural due process claim without addressing the sufficiency of the process plaintiff had received in the prison disciplinary process.

In *Brewton*, this court noted that even though the decision in *Frazier* had followed a bench trial, a trial is not always necessary when applying and dismissing cases under *Sandin*. *Brewton*, 948 F.Supp. at 249. There are many instances where district courts have dismissed inmate claims of due process violations without providing for a trial. For example, in *Carter v. Carriero*, 905 F.Supp. 99, 103–104 (W.D.N.Y.1995) (Skretny, J.), the court granted the defendants' motion for summary judgment finding that the plaintiff's 270–day SHU sentence did not amount to an atypical, significant hardship in relation to the ordinary incidents of prison life. The plaintiff in *Brewton* claimed that he had a protected liberty interest in remaining in the Orleans County Prison general population and that his disciplinary hearing was constitutionally defective. He had spent 74 days in SHU before his punishment was reversed on appeal. This court held that under the principles set forth in *Sandin* and *Frazier*, the plaintiff had no protected liberty interest and that the "appropriate remedy for violation of hearing regulations, where the result is not an atypical, significant hardship, is a question for the state courts." *Brewton*, 948 F.Supp. at 250.

■ Plaintiff in the present case has made two specific claims which must be addressed up front. First, he asserts that *Sandin* should not be applied retroactively (Item 31, ¶ 16). In *Frazier*, the Second Circuit directly addressed this issue, unambiguously stating that "*Sandin* applies retroactively." *Frazier*, 81 F.3d at 317, (citing *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 95–97, 113 S.Ct. 2510, 2516–18, 125 L.Ed.2d 74 (1993) (federal law "must be given full retroactive effect").

Second, plaintiff claims that his confinement in SHU has been continuous and indefinite for at least five years, without a mechanism for periodic review. This claim is not accurate. While plaintiff has certainly been confined to SHU for a considerable period of time, the record reveals that his confinement has been the result of several distinct offenses, for which he underwent separate disciplinary proceedings and received separate sentences. Specifically, plaintiff was initially confined at Southport as a result of some prior violations (not relevant to this case). Due to his involvement in the May 1991 Southport riot, plaintiff was initially sentenced to three years in SHU (this is the sentence that was later annulled by the Appellate Division, Third Department in March 1993). It is unclear as to whether he served any time in SHU on this charge or whether he was merely serving time in SHU on the prior violation which had brought him to Southport in the first place. In February 1993, plaintiff began serving a sentence of 180 days' SHU confinement for having committed an unhygienic act. Finally, on August 23, 1993, plaintiff began serving his 36–month sentence for the April 13, 1993, Tier III hearing's finding that he had been guilty of promoting prison contraband in the first degree during the Southport riot. Plaintiff served 33 months of this sentence. The remaining three months were held in suspension.

Plaintiff's due process claim in the present action only challenges the April 13, 1993, hearing in which he was found to have violated DOCS Rule 1.00 (Penal Law Offense), which resulted in a 36–month SHU sentence. Thus, the court is only reviewing that violation and sentence and the process plaintiff received in relation to that violation and sentence.

■ Applying the two-prong analysis set forth under *Sandin*, this court first assumes that a SHU sentence of 36 months constitutes an atypical and significant hardship under *Sandin* for the purpose of establishing a protected liberty interest. *See Lee v. Coughlin*, 902 F.Supp. 424, 431 n. 9 (S.D.N.Y. 1995) (stating that the court was "hard pressed to believe that 376 days in SHU would not constitute an 'atypical and significant hardship' as defined by *Sandin*.") *recons. granted*, 914 F.Supp. 1004 (S.D.N.Y. 1996); *Edmonson v. Coughlin*, 1996 WL 622626 (W.D.N.Y.) (Heckman, MJ) (150 days' confinement in SHU with 3 months loss of "good time" implicated liberty interest). The court acknowledges that some other district court judges have found some SHU sentences of longer durations not to implicate an inmate's liberty interests, *see Medina v.*

*Bartlett*, 1995 WL 529624 (W.D.N.Y.1995) (Elfvin, J.) (2,555 days in SHU is not atypical and significant); nevertheless, this court does not believe that a sentence of three years fails to create a protected liberty interest.

■ Having determined that a 36–month SHU sentence creates a liberty interest, the court now must determine whether the procedural protections provided by the defendants were sufficient under the standard set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Sandin*, 515 U.S. at ———–——, 115 S.Ct. at 2300–2302. Under *Wolff*, an inmate is entitled to 1) written notice of the charges at least 24 hours in advance; 2) a written statement by the fact finders as to the evidence relied upon and the reasons for the action; and 3) an opportunity to call witnesses and present evidence when doing so will not be unduly hazardous to institutional safety or correctional goals. *Wolff*, 418 U.S. at 564–66, 94 S.Ct. at 2978–80.

■ In the present case, despite his protestations to the contrary, the record shows that plaintiff received the process he was due. He received both written notice of the charges against him and a written explanation of the hearing officer's final determination and the facts and reasons underlying this decision. Although plaintiff claims that he was denied the ability to call particular witnesses, defendants have provided reasonable explanations as to why these witnesses were not called. Specifically, two of plaintiffs proposed witnesses, the county judge and the Assistant District Attorney involved in plaintiffs December 1992 Chemung County trial for the charge of promoting prison contraband, refused to testify on the grounds that they had no relevant testimony to offer (Item 27; Item 31, Exhibit E). Acting Captain Walter denied the remaining witnesses because they were not involved in the underlying action (Item 27). In *Wolff*, the Supreme Court specifically recognized that prison officials have the discretion to decline to call witnesses in disciplinary proceedings, particularly those who know nothing of the underlying events at issue. *Wolff*, 418 U.S. at 568–69, 94 S.Ct. at 2980–81.

It appears as if plaintiff did not understand the nature of the proceeding that occurred on April 14, 1993. That proceeding was a Tier III Superintendent's Hearing, an in-house disciplinary proceeding, regarding a misbehavior report charging plaintiff with a violation of DOCS Rule 1.00 (Penal Law Offense). Rule 1.00 prohibits inmates from committing any penal law offenses and authorizes both prosecution through the courts and departmental sanctions (See, Item 31, Exhibit H, p. 8). The purpose of the April 14 hearing was to determine whether plaintiff had already been found guilty in state court of promoting prison contraband in the first degree (Penal Law 205.25), and if so, to assign an appropriate penalty for this violation. Thus, all the hearing officer had to do to find a prison rule violation in this case was to ascertain whether plaintiff had been actually convicted in state court. The hearing was not an opportunity for plaintiff to reargue the merits of the underlying charge. The prison officials had the opportunity to impose their own penalty on plaintiff for his involvement in the Southport riot without implicating double jeopardy.[1] The record shows that plaintiff was found guilty, by verdict, of promoting prison contraband in the first degree in Chemung County Court on December 22, 1992.

In *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975, the Supreme Court specifically stated that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply" (citations omitted). In the present case, plaintiff was able to argue the merits of the underlying change in a state court criminal prosecution. Consequently, he was presumably accorded "the

---

1. In *Bolanos v. Coughlin*, 1993 WL 762112, *13 (S.D.N.Y.), the court explained that since the double jeopardy clause is limited to criminal prosecutions, the double jeopardy clause does not pertain to prison disciplinary hearings. The court emphasized that prison disciplinary hearings are fundamentally different from criminal prosecutions in that in prison disciplinary hearings prisoners are not accorded the full panoply of rights due to a criminal defendant. *Id.*, (citing *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974)). See *also Gorman v. Moody*, 710 F.Supp. 1256, 1266 (N.D.Ind.1989).

full panoply of rights due a criminal defendant."[2] Since plaintiff had already received more process on the underlying charge than would normally be accorded to him in a prison disciplinary proceeding, the court fails to see how plaintiff was denied due process during his April 14, 1993, Tier III hearing.

## II. *Eighth Amendment Claim*

Plaintiff asserts that he is entitled to relief under the Eighth Amendment since as a result of being denied due process in his April 14, 1993, disciplinary hearing he was subjected to cruel and unusual punishment. Plaintiff has not specifically addressed his Eighth Amendment claim in his pleadings, but rather he has combined it with his due process claim (*See* Item 1, p. 7). In his recitations of the facts underlying his claims, plaintiff describes the conditions of SHU and alleges that prison officials (1) placed him in a cell "around feces throwing inmates," (2) had inmates throw feces in his cell and directly at him, and (3) placed him on a restricted diet (Item 31, pp. 2, 16). Thus, construing the complaint and pleadings to resolve all ambiguities in favor of plaintiff, the court assumes that he is claiming that his confinement in SHU constituted cruel and unusual punishment.

In order to succeed on his Eighth Amendment claim, plaintiff must prove that the conditions of his confinement were "barbarous" or "shocking to the conscience." *Sostre v. McGinnis*, 442 F.2d 178, 191 (2d Cir.1971), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). Segregated confinement does not itself violate the Eighth Amendment. *Id.*, at 192. The *Sostre* court found that the plaintiffs confinement in a punitive segregation facility for twelve months and eight days, in which he was isolated from human conduct, severely restricted in opportunities for exercise, limited to one shower per week, restricted from buying books, magazines or newspapers, limited in access to the prison library, restricted in the ability to receive food packages from the outside, and limited at meals to only one

portion and a different desert than given to the general population, did not violate basic human dignity. The court also found that it should not second-guess the prison authorities on their judgment that the punishment was a reasonable means of maintaining discipline and order. *Id.*, at 191.

In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court explained that there are two prerequisites for an Eighth Amendment violation.

"First, the deprivation alleged must be, objectively, 'sufficiently serious,'"... a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities"....[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.... [Second,] a prison official must have a "sufficiently culpable state of mind." ... In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."

*Id.* at 834, 114 S.Ct. at 1977. In order for deliberate indifference to be found, the official must have "know[n] of and disregard[ed] an excessive risk to inmate health or safety; the official must [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] draw[n] the inference." *Id.* at 837, 114 S.Ct. at 1979.

Assuming for purposes of this motion that plaintiffs factual allegations are true, the court finds that there is at least a material issue of fact as to whether plaintiff has suffered violations of his Eighth Amendment rights at the hands of at least some of the defendants. If plaintiff was placed in a cell in close proximity to feces-throwing inmates, inmates threw feces in plaintiff's cell or directly at him, and this conduct was condoned, encouraged, or permitted by the prison authorities (*see* Item 31, pp. 3, 16), then plaintiff seems to have a strong argument that he was subjected to barbarous treatment, posing a substantial risk of serious harm. The court acknowledges that plaintiff has not pro-

---

**2.** If he believes that the process that he received in his state criminal prosecution was constitutionally infirm, he may file a habeas corpus petition challenging those proceedings. This action is not the proper channel for challenging that proceeding.

vided a strong factual discussion of these allegations, particularly since plaintiff did not discuss his Eighth Amendment claim separately from his due process claim. Now that the court has dismissed the due process claim, plaintiff should take steps to provide more details about his Eighth Amendment violations. If, by the time discovery is completed in this case, defendants believe that the evidence does not support an Eighth Amendment claim, then they can bring a new motion for summary judgment.

 Although the court declines to dismiss plaintiffs Eighth Amendment claim against all defendants at this point, the court finds that the claim against defendants Coughlin, Irvin, and Keane should be dismissed. Personal involvement in an alleged constitutional deprivation is a well-settled prerequisite for an award of damages in a § 1983 action. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). "The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Wright,* 21 F.3d at 501 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). A defendant's personal involvement in a constitutional deprivation within the meaning of § 1983 may be established in several ways:

[ (1) ] The defendant may have directly participated in the infraction ... [; (2) ] A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong ... [; (3) ] A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue ... [; (4) ] [A] supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Wright,* 21 F.3d at 501 (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted)). In addition, supervisory liability may only be imposed where an official demonstrates "gross negligence" or "deliberate indifference" to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place. *Wright,* 21 F.3d at 501 (citing *McCann v. Coughlin,* 698 F.2d 112, 125 (2d Cir.1983), and *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989)).

 The court finds that plaintiff has not alleged sufficient facts regarding defendants Coughlin, Irvin and Keane to hold them liable in this action. Plaintiff's allegations do not indicate that these defendants implicitly authorized, knowingly acquiesced, or were even aware of any unconstitutional practices by any of the other defendants, or anyone else. Furthermore, plaintiff has failed to allege facts which would support a finding that any of these three defendants were grossly negligent in managing or supervising other employees, were deliberately indifferent to unconstitutional practices, or promoted a policy or custom that condoned unconstitutional practices.

### CONCLUSION

For the foregoing reasons, this court grants defendants' summary judgment motion (Item 23) in part and denies it in part. The court grants summary judgment in favor of defendants on plaintiff's due process claim and grants summary judgment in favor of defendants Coughlin, Irvin and Keane on plaintiff's Eighth Amendment claim. The court denies summary judgment on plaintiff's Eighth Amendment claim with respect to defendants Selsky and Walter.

The parties shall advise the court by letter as to what steps should be taken to complete the preparation of this case. These letters should be received by the court not later than June 1, 1997.

So ordered.