**Patrick L. CHERRY, Plaintiff,**

v.

**Thomas C. JORLING, et al., Defendants.**

**No. 97–CV–152A(F).**

United States District Court,
W.D. New York.

Nov. 15, 1998.

260

Sullivan & Oliverio (Christopher J. Belter, of counsel), Buffalo, New York, for plaintiff.

Spann & Civilette (David M. Civilette, of counsel), Dunkirk, New York, for defendant Christopher Bierfeldt.

Andrews, Sanchez, Amigone, Mattrey & Marshall (Philip M. Marshall, of counsel), Buffalo, New York, for defendant Donald Fuhrman.

Dennis C. Vacco, New York State Attorney General (Peter B. Sullivan, of counsel), Buffalo, New York, for defendant Thomas C. Jorling.

MacKenzie, Smith, Lewis, Michell & Hughes (Peter D. Carmen, of counsel), Syracuse, New York, for defendant John J. Spagnoli.

### ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(B), on June 11, 1997. On September 30, 1998, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendants' motion to dismiss be granted against each defendant including John Doe, Mary Doe, Richard Roe and Susan Roe. Plaintiff filed a motion to extend the time to file objections to the Report and Recommendation to November 11, 1998 which the Court granted. As of this date, objections have not been filed with the Court.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendants' motion to dismiss is granted against each defendant including

John Doe, Mary Doe, Richard Roe and Susan Roe and the case dismissed in its entirety.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned on June 11, 1997, by Hon. Richard Arcara for report and recommendation of all dispositive actions. It is currently before the court on Defendant Spagnoli's Motion to Dismiss, filed November 10, 1997 (Docket Item No. 34), and joined in by Defendants Fuhrman, filed December 9, 1997 (Docket Item No. 37), and Bierfeldt, filed December 15, 1997 (Docket Item No. 41).[1] Also pending before this court are Defendant Jorling's Motion for Summary Judgment, filed October 27, 1997 (Docket Item No. 26), Defendant Fuhrman's Motion for Summary Judgment, filed November 5, 1997 (Docket Item No. 30), Defendant Bierfeldt's Motion for Summary Judgment, filed December 15, 1997 (Docket Item No. 38), Defendant Spagnoli's Motion for Summary Judgment, filed December 15, 1997 (Docket Item No. 42), and Plaintiff's Motion for an Order Permitting Discovery, filed December 31, 1997 (Docket Item No. 47).[2] Based on the following, Defendant Spagnoli's motion to dismiss should be GRANTED. The remaining motions should be DISMISSED as moot.

### BACKGROUND

Plaintiff, Patrick L. Cherry filed this 42 U.S.C. § 1983 civil rights action on March 10, 1997, alleging his civil rights were violated by Defendants when they initiated and conducted criminal proceedings against him on or about July 15, 1991 and administrative actions to terminate him from employment on or about February 28, 1992. Plaintiff claims that such actions deprived him of the rights and privileges guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution, causing him severe emotional and physical distress, damage to his character and reputation, and financial harm.

Defendants New York State Department of Environmental Conservation, New York State Inspector General's Office, Christopher Bierfeldt, Terrance Johnson, and Peter Emborsky filed a motion to dismiss or for a more definite statement on June 9, 1997 (Docket Item No. 14). On June 9, 1997 the Defendants filed a Memorandum of Law on Behalf of All Defendants in Support of the Motion to Dismiss the Complaint (Docket Item No. 15). Plaintiff was directed to file a response to Defendants' motion to dismiss by August 4, 1997, but by stipulation and order filed August 8, 1997 (Docket Item No. 18) Plaintiff agreed to discontinue the action against Defendants New York State Department of Environmental Conservation, the State of New York Office of the Inspector General, Terrance Johnson, and Peter Emborsky. Plaintiff filed an amended complaint on August 18, 1997 (Docket Item No. 19), adding as defendants Thomas C. Jorling, John J. Spagnoli, "John Doe," "Mary Roe," "Richard Roe," and "Susan Roe."

Defendant Thomas C. Jorling filed an answer to the Amended Complaint on September 19, 1997 (Docket Item No. 23). On October 27, 1997 Defendant Jorling filed a Motion for Summary Judgment on statute of limitations grounds (Docket Item No. 26).[3] On

---

1. In an Order filed contemporaneously with this Report and Recommendation, the court granted the Motions of Defendants Fuhrman and Bierfeldt to join in Defendant Spagnoli's Motion to Dismiss.

2. In an order filed contemporaneously with this Report and Recommendation, the court dismissed Plaintiff's Motion for Limited Discovery without prejudice, as such motion is moot.

3. The court finds that Defendant Jorling's motion for summary judgment may also be construed as a motion to dismiss for failure to state a claim.

Although Defendant Jorling asserts in his motion that the statute of limitations bars application of the Amended Complaint as he resigned from employment with the DEC on March 7, 1994, whether the statute of limitations has run necessarily involves the issue of whether Defendant Jorling personally participated in any of the underlying conduct upon which Plaintiff's claims are based. See Memorandum of Law in Support on Behalf of Defendant Jorling in Support of Motion for Summary Judgment, filed October 27, 1997 (Docket Item No. 27) at 3–6. Plaintiff has asserted Defendant Jorling initiated the disciplin-

November 11, 1997, Defendant Fuhrman filed a Motion for Summary Judgment on statute of limitations grounds. (Docket Item No. 30).

On November 10, 1997, Defendant John J. Spagnoli filed a Motion to Dismiss the Amended Complaint (Docket Item No. 34). Defendant Fuhrman moved to join in Defendant Spagnoli's Motion to Dismiss on December 9, 1997 (Docket Item No. 37). Defendant Spagnoli filed a Motion for Summary Judgment on December 15, 1997 (Docket Item No. 42). On December 15, 1997 Defendant Bierfeldt moved to join in Defendant Spagnoli's Motion to Dismiss and to join in the motions for Summary Judgment filed by Defendants Jorling and Fuhrman (Docket Item No. 41). By separate Order filed contemporaneously with this Report and Recommendation, Defendants' Motions for joinder in the Motion to Dismiss have been granted.

Plaintiff moved on December 31, 1997 for an order permitting Plaintiff to conduct depositions and other limited discovery prior to submitting affidavits in opposition to Defendants' Motions for Summary Judgment. (Docket Item No. 47). Philip M. Marshall, Esq., Attorney for Defendant Fuhrman filed an Affidavit on January 2, 1998 in Opposition to Plaintiff's Motion to Permit Discovery. (Docket Item No. 48). On January 7, 1998, Defendant Jorling filed a Memorandum in Opposition to Plaintiff's Motion to Permit Discovery (Docket Item No. 49). Peter D. Carmen, Esq., Attorney for Defendant Spagnoli filed an Affidavit in Opposition to Plaintiff's Motion to Permit Discovery on January 13, 1998 (Docket Item No. 50). David M. Civilette, Esq., Attorney for Defendant Bierfeldt filed an Affirmation in Opposition to

Plaintiff's Motion to Permit Discovery on January 14, 1998 (Docket Item No. 51).

By order dated August 4, 1998, Plaintiff was directed to file his response to the motion to dismiss. (Docket Item No. 52). Plaintiff filed his Response in Opposition to the Motion on August 24, 1998. (Docket Item No. 53) ("Plaintiff's Response"). On August 26, 1998, Defendant Jorling filed a Reply Memorandum in Response to Plaintiff's Affidavit in Opposition to Defendants' Motion to Dismiss. (Docket Item No. 54). On September 4, 1998 Defendant Spagnoli filed a Reply Affidavit in further support of his Motion to Dismiss the Amended Complaint. (Docket Item No. 55). Based on the following, Defendants' Motions to Dismiss should be GRANTED [4] and Defendants' Motions for Summary Judgment and Plaintiff's Motion to Permit Discovery should also be DISMISSED as moot.

## FACTS [5]

Plaintiff is currently employed by the New York State Department of Environmental Conservation ("DEC") in the position of Conservation Operation Supervisor III in the Cattaraugus County area and was so employed by the DEC during the period set forth in the Amended Complaint when the alleged violations occurred. Amended Complaint, ¶ 12. Defendant Thomas C. Jorling was Commissioner of the DEC from March 1987 until 1994. During the time period alleged in the Amended Complaint, Plaintiff was directly supervised by Ronald Pigman, Regional Operations Supervisor, who reported directly to Defendant John J. Spagnoli, Regional Director of Region 9 of the DEC. *Id.,* ¶ 14.[6] Plaintiff's job responsibilities in-

ary proceeding against Plaintiff at issue which is the basis of Plaintiff's Fourteenth Amendment claim. Amended Complaint. ¶ 55. As discussed *infra,* there is, however, no allegation of Jorling's personal involvement in Plaintiff's Fourth Amendment violations, which is prerequisite to a claim under § 1983. Therefore, the court treats Defendant Jorling's motion for summary judgment as, in the alternative, a motion to dismiss for failure to state a claim.

**4.** Plaintiff's amended complaint should also be DISMISSED as to the Defendants John Doe, Mary Doe, Richard Roe, and Susan Roe, as that portion of the complaint is founded upon the

same essential bases of liability as alleged against the other Defendants.

**5.** Facts are taken from the pleadings and papers filed in connection with the pending motions.

**6.** According to Plaintiff, Defendants "John Doe" and "Mary Doe" represent unnamed individuals employed by either the DEC, the Inspector General's Office or the State of New York who unlawfully violated Plaintiff's rights. Amended Complaint, ¶ 6. Defendants "Richard Roe" and "Susan Roe" represent unknown supervisors and policy makers within the DEC, the Inspector

cluded allocating manpower, equipment, and supplies to each crew and work location as required. Amended Complaint, ¶ 16. As part of his responsibilities, Plaintiff was required to make repairs of equipment breakdowns in the field and to handle individual jobs that were remote or did not warrant sending a crew of employees. *Id.*, ¶ 17.

Plaintiff began storing DEC property and equipment at his home in 1969, when he was first hired by DEC. Amended Complaint, ¶¶ 22–23. Plaintiff alleges that his supervisor, Mr. Pigman gave Plaintiff express permission to store the DEC property and equipment at his home so that he could easily transport those materials to various worksites. *Id.* According to Plaintiff, this arrangement was first approved by either Defendant Jorling or Defendant Spagnoli. Amended Complaint, ¶ 24.

Plaintiff alleges that Defendant Bierfeldt, who was then employed by DEC, entered Plaintiff's property in early March 1991 without his permission and photographed various items of equipment and supplies located on the premises. Bierfeldt delivered the photographs to Defendant Donald Fuhrman, Chief Investigator with the New York State Office of the Inspector General advising Fuhrman that the property depicted in the photographs was owned by the DEC and had been stolen by Plaintiff. Amended Complaint, ¶¶ 28–30. Fuhrman in turn gave this information to Larry Himelein, District Attorney for Cattaraugus County, New York, who in turn advised Senior Investigator Tom Stofer of the New York State Police.

The state police then applied to Cattaraugus County Court Judge Paul B. Kelly for a search warrant for Plaintiff's residence, accompanied by District Attorney Himelein, Fuhrman, and Bierfeldt. Amended Complaint, ¶ 30. Based on statements by Bierfeldt and Fuhrman, Judge Kelly issued the search warrant. *Id.* Plaintiff alleges that

Fuhrman, Bierfeldt and other persons contacted the media and instigated media coverage of the execution of the search warrant at Plaintiff's home. *Id.*, ¶ 37. The search warrant was executed at Plaintiff's residence by State Police officers, Fuhrman, and employees of the DEC on March 29, 1991, resulting in the seizure of approximately 318 items owned by the DEC. *See* Affidavit of John J. Spagnoli, filed December 15, 1997, (Docket Item No. 43), ("Spagnoli Affidavit"), Exhibit A.

Plaintiff alleges Bierfeldt and others then testified falsely before a Cattaraugus County Grand Jury that, on July 15, 1991, charged Plaintiff with Grand Larceny in the Third Degree, Criminal Possession of Stolen Property in the Third Degree, and three counts of Perjury in the First Degree for allegedly swearing falsely in testimony before the Grand Jury. Amended Complaint, ¶ 41.

On February 28, 1992 the DEC sent Plaintiff a notice of disciplinary action and proposed termination pursuant to the Collective Bargaining Agreement between the DEC and the Public Employees Federation, AFL—CIO. *See* Exhibit A, Spagnoli Affidavit. The notice of discipline contained six charges relating to the pending indictment against Plaintiff. Plaintiff alleges that Jorling, Spagnoli, and Bierfeldt initiated and prosecuted the administrative proceeding against him knowing the criminal charges were false, and that the disciplinary proceeding would violate his constitutional rights. Amended Complaint, ¶ 62.

After the commencement of Plaintiff's trial on July 12, 1993, Cattaraugus County Judge John Ward ruled that the search warrant issued by Judge Kelly was improperly issued and suppressed as evidence the property seized from Plaintiff based on the warrant.[7] Amended Complaint, ¶¶ 42, 43. As a result the criminal charges against Plaintiff were dismissed on July 15, 1993. Amended Com-

---

General's Office or the state of New York who either supervised or established customs and policies which allowed the named defendants to violate Plaintiff's rights. Amended Complaint, ¶ 7.

**7.** Judge Ward ruled that Bierfeldt's criminal trial testimony was substantially different than his *in*

*camera* testimony before Judge Kelly on March 26, 1991, and consequently there was not reasonable cause to believe that stolen or unlawfully possessed property would be found at Plaintiff's residence at that time. Amended Complaint, ¶ 45.

plaint, ¶ 47. On March 10, 1995 an arbitrator found Plaintiff not guilty of all the charges set forth in the notice of discipline. Amended Complaint, ¶ 69. There is no allegation that the Plaintiff was at any time suspended or terminated from his position, rather, Plaintiff states in the Amended Complaint that he was retained in his employment. Amended Complaint, ¶ 12.

Based on these allegations and proceedings the Plaintiff claims that the Defendants violated his rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments and seeks damages pursuant to 42 U.S.C. § 1983 for "severe emotional and physical distress and damage to his character and reputation and financial harm." Amended Complaint, ¶ 70. Plaintiff also seeks an award of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

## DISCUSSION

On a motion to dismiss, the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *See Scheurer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Association,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The court is required to read the complaint with great generosity on a motion to dismiss. *See Yoder v. Orthomolecular Nutrition Institute,* 751 F.2d 555, 558 (2d Cir.1985). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

Plaintiff alleges that violations of his civil rights by Defendants are actionable under 42 U.S.C. § 1983. Pursuant to 42 U.S.C.

§ 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Specifically, in the Amended Complaint, Plaintiff alleges violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. Amended Complaint, ¶ 9. Defendants argue that the Amended Complaint fails to state a cause of action as Plaintiff has not alleged deprivation of a federal constitutional right. Memorandum of Law in Support of Defendant John J. Spagnoli's Motion to Dismiss the Amended Complaint, filed November 10, 1997 (Docket Item No. 35) ("Spagnoli Memorandum"). As the Amended Complaint appears to primarily rely on the Fourteenth Amendment, Amended Complaint, ¶ 70, Defendants' potential liability under that amendment will be addressed first.

### A. Fourteenth Amendment Claim

In the present case, Plaintiff alleges that Defendants' actions caused him to experience "severe emotional and physical distress and damage to his character and reputation and financial harm." Amended Complaint, ¶ 70. Plaintiff alleges that the Defendants created a "stigma that has prevented . . . [him] from taking advantage of other employment opportunities." Amended Complaint, ¶ 73.

Plaintiff's allegations of damage to character and reputation, and resulting financial harm and emotional distress are traditionally state tort-law claims. As the Supreme Court stated in *Siegert v. Gilley,* 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)

> Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage *flows from injury caused by the defendant to plaintiff's reputation,* it may be recoverable under state tort law but is not recoverable in a *Bivens* [*v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ] action.

*Siegert, supra,* at 234, 111 S.Ct. 1789 (cited in *Valmonte v. Bane,* 18 F.3d 992, 1001 (2d Cir.1994) (emphasis added)).

The Supreme Court has declined to include state tort-law as a basis to actions under federal civil rights statutes based on an asserted violation of the Fourteenth Amendment. *See Paul v. Davis,* 424 U.S. 693, 700, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (citing *Screws v. United States,* 325 U.S. 91, 109, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). In *Paul,* the Court held that a plaintiff whose name and photograph appeared on a flyer which was captioned "Active Shoplifters" and which was distributed among merchants by local police had failed to allege the deprivation of a liberty or property interest sufficient to invoke the protection of the Due Process Clause of the Fourteenth Amendment. *Davis, supra,* at 712, 96 S.Ct. 1155. The plaintiff alleged that the phrase "Active Shoplifters" impermissibly deprived him of a liberty interest protected by the Fourteenth Amendment, as the designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and would seriously impair his future employment opportunities. *Paul, supra,* at 697, 96 S.Ct. 1155.

The Court, based upon its previous holdings in *United States v. Lovett,* 328 U.S. 303, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946), *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), and *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), stated that "the Court has never held that mere defamation of an individual ... was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment." *Paul, supra,* at 706, 96 S.Ct. 1155. Noting that the alleged defamation had not resulted in the termination of the plaintiff's employment, the Court held that the infliction by state officials of a stigma on the plaintiff's reputation, without more, was an insufficient basis to invoke the protections of the Due Process Clause and held that a showing of

"stigma plus" must be made to determine whether a property or liberty interest protected by federal due process is at stake.

■ Under the "stigma plus" test, alleged defamation by a public official must be coupled with a tangible injury to constitute a liberty or property interest protected by the Fourteenth Amendment. *Paul, supra,* at 709, 96 S.Ct. 1155; *see also Martz v. Inc. Village of Valley Stream,* 22 F.3d 26, 31 (2d Cir.1994) ("[d]efamation alone, even by a government entity, does not constitute a deprivation of a liberty interest protected by the Due Process Clause"); *Dower v. Dickinson,* 700 F.Supp. 640, 645 (N.D.N.Y.1988) (complaint alleging injury to business reputation and interference with conduct of business but not alleging loss of employment, loss of contract, or any other any change in status did not allege an injury to a liberty or property interest protected by federal due process).

Courts in this circuit have adopted a restrictive view of what can be considered a tangible interest sufficient to invoke protection under the Fourteenth Amendment, declining to find such an interest was at stake even though the plaintiff was demoted and suffered a reduction in pay, *Baden v. Koch,* 799 F.2d 825 (2d Cir.1986), or suffered interference with a future business opportunity, *Dower, supra,* at 647. *See also Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1108–109 (D.C.Cir.1985) ("tangible injury" includes loss of government employment, a demotion in rank and pay in government employment, or the loss of a right to be considered for government contracts in common with other persons). The Second Circuit has held that "tangible interest" includes significant damage to a person's employment opportunities such as dismissal from a government job, or deprivation of some other legal right or status. *Martz, supra,* at 32.[8]

■ A generalized allegation of financial harm is insufficient to meet the required "tangible injury" element for a § 1983 action based on injury to one's reputation. *See*

**8.** In *Martz,* the court stated that a "concurrent temporal link" between the defamation and the dismissal is necessary if the employee is to succeed upon a claim of liberty deprivation. *Martz,*

*supra,* at 32. As the court found an insufficient nexus between the defamation and the time of termination, the court held that dismissal of the plaintiff's complaint was proper. *Id.*

*Sacco v. Pataki,* 982 F.Supp. 231, 244 (S.D.N.Y.1997) ("stigma plus" requires defamation coupled with dismissal from government employment or deprivation of some other legal right); *Barber v. Winn,* 1997 WL 151999, \*4 (N.D.N.Y.1997) (loss of government contracts and loss of professional reputation cannot serve as the "plus" in the "stigma plus" test, as they flow directly from the alleged defamation). *See also Kelly v. Borough of Sayreville,* 107 F.3d 1073, \*1078 (3d Cir.1997); *Sturm v. Clark,* 835 F.2d 1009, 1012–13 (3d Cir.1987); *Mosrie v. Barry,* 718 F.2d 1151, 1158 (D.C.Cir.1983); *Nicole K. v. Upper Perkiomen Sch. Dist.,* 964 F.Supp. 931, 938 (E.D.Pa.1997) (even financial injury due solely to government defamation does not constitute a claim for deprivation of a federal constitutional liberty interest).

In the present case, Plaintiff has failed to allege a tangible injury to a property or liberty interest as required by *Paul,* and, as such, has failed to assert deprivation of a constitutionally protected interest under the Fourteenth Amendment in accordance with relevant caselaw. Plaintiff states that he continues to be employed by the DEC, and has suffered no demotion, reassignment, or other change in employment since the time of the alleged actions by Defendants. Amended Complaint, ¶ 12. Plaintiff's generalized assertion of financial harm in the Amended Complaint is an insufficient basis for a claim of deprivation of a constitutionally protected interest under the "tangible interest" test adopted by the Second Circuit. *See* Amended Complaint, ¶ 70. Plaintiff's Response to Defendant Spagnoli's Motion to Dismiss merely repeats the insufficient allegation of the Amended Complaint. As Plaintiff has failed to allege an injury to a liberty or property interest which is protected by the Due Process Clause, Plaintiff's Amended Complaint fails to state a claim for relief on this ground.

## B. *Fourth and Fifth Amendment Claims*

Although, as noted, Plaintiff appears to rely primarily on the Fourteenth Amendment, a fair reading of the complaint indicates that Plaintiff may also intend to assert causes of action under the Fourth and Fifth Amendments. Amended Complaint, ¶ 9. The court will therefore address whether the Amended Complaint can be sustained on either of these constitutional bases.

### 1. *Fourth Amendment Claim*

Plaintiff makes a general allegation that the acts of the Defendants violated his constitutional rights under the Fourth Amendment, but has not provided any specifics demonstrating the applicability of this amendment. Amended Complaint, ¶ 9. This court finds that no violation of the Fourth Amendment occurred as to any of the named Defendants, as, based on a generous reading of the Amended Complaint, (1) Jorling and Spagnoli are not alleged to have been personally involved in the deprivation of Plaintiff's rights; (2) Defendant Bierfeldt's entry onto Plaintiff's premises is not alleged to have been under color of state law; (3) none of the Defendants are alleged to have been directly involved in procuring or executing the search warrant which resulted in a search of Plaintiff's premises; and (4) Plaintiff fails to allege that obtaining the search warrant and arrest warrant was outside of the good faith exception to the Fourth Amendment's warrant clause.

### a. Search Warrant

As to Defendants Spagnoli and Jorling, Plaintiff has failed to establish that these individuals were personally involved in the allegedly unconstitutional search. It is well established that respondeat superior or vicarious liability will not establish liability under § 1983. *Collins v. City of Harker Heights,* 503 U.S. 115, 123, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (citing *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Porter v. Coughlin,* 964 F.Supp. 97, 105 (W.D.N.Y.1997)). "Personal involvement," not mere "linkage in the ... chain of command" in an alleged constitutional deprivation is a prerequisite for an award

of damages in a § 1983 action. *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985). *See also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Porter, supra,* at 105.

■ A defendant who occupies a supervisory position may be found to be personally involved in the deprivation of a plaintiff's constitutionally protected liberty interests by (1) direct participation in the violation; (2) failure to remedy the violation upon learning of it; (3) creation of a policy or custom under which unconstitutional practices, including the specific violation at issue, occurred or allowing such policy or custom to continue; or (4) gross negligence in managing subordinates who caused the unlawful condition or event. *Wright, supra,* at 501 (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). In addition, supervisory liability may be imposed where an official demonstrates "gross negligence" or "deliberate indifference" to the constitutional rights of individuals by failing to act on information indicating that unconstitutional practices are taking place. *Wright, supra,* at 501.

■ In the present case, Plaintiff has failed to allege with the required degree of specificity that Defendants Jorling and Spagnoli were personally involved in or aware of the application for the search warrant and its execution or in the decision to prosecute Plaintiff. Plaintiff alleges only that Defendants Jorling and Spagnoli established a policy of allowing DEC employees to store DEC equipment and materials at their homes and were, therefore, aware of the existence of such a policy. Amended Complaint, ¶¶ 24–25. According to Plaintiff, "despite their knowledge that the criminal charges were without merit and although they had the ability to prevent the criminal prosecution, defendants Jorling and Spagnoli did nothing and the case went to trial." Belter Affidavit, ¶ 5(e). Plaintiff also asserts that Defendants Jorling and Spagnoli initiated and prosecuted the subsequent disciplinary proceedings against Plaintiff "with the intent to deprive the plaintiff of his rights and privileges guaranteed by the Constitution" although they knew the charges against Plaintiff were false. Amended Complaint, ¶ 62.

Viewed in the light most favorable to Plaintiff, none of these allegations relate to an unconstitutional search of Plaintiff's property. Even if, as Plaintiff asserts, Defendants Jorling and Spagnoli established a policy of allowing DEC employees to store DEC equipment and materials at their homes, Plaintiff has not alleged that the claimed unconstitutional practices occurred directly as a result of this policy and nothing in the Amended Complaint indicates that Defendants Jorling or Spagnoli had knowledge of or participated in the procurement or execution of the search warrant. Furthermore, Plaintiff has made no allegation of any particular policy or practice violating his Fourth Amendment rights other than generalized assertions. Finally, there is no allegation asserting Jorling and Spagnoli were deliberately indifferent to any violations of Plaintiff's Fourth Amendment rights. Plaintiff's assertions of a policy relating to storage of DEC property and Jorling and Spagnoli's initiation and approval of disciplinary proceedings against Plaintiff, do not raise a Fourth Amendment violation, rather, they relate solely to the Plaintiff's claim of defamation under the Fourteenth Amendment, which as discussed, is insufficient as a matter of law. As Plaintiff has failed to allege that Defendants Jorling and Spagnoli were personally involved in the application for the warrant or its subsequent execution, Plaintiff has failed to assert a claim under the Fourth Amendment against these Defendants.

■ Nor, based upon the facts alleged in the Amended Complaint, does Plaintiff state a § 1983 claim as to Defendant Bierfeldt as, assuming the truth of the facts as alleged, Plaintiff has failed to assert that a violation of the Fourth Amendment occurred based on Bierfeldt's actions. In order to state a claim under § 1983, a plaintiff must demonstrate that a person acting under the color of state law committed the conduct upon which the alleged constitutional violation is based. 42 U.S.C. § 1983. *See also West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). A person acts under the color of state law when his actions are committed in the performance of any actual or pretended duty, and are not committed solely within the ambit of personal

pursuits. *Bonsignore v. City of New York,* 683 F.2d 635, 638–39 (2d Cir.1982).

■ In the present case, the Amended Complaint does not indicate that Defendant Bierfeldt was acting under color of state law when the alleged violation of Plaintiff's Fourth Amendment rights occurred, stating only that "Bierfeldt, who was about to be terminated from employment with DEC for failing to return to work following an alleged worker's compensation injury, entered plaintiff's property without his permission and photographed various items of equipment and supplies located on the premises." Amended Complaint, ¶ 27. There is no indication in the Amended Complaint that Defendant Bierfeldt was acting within the scope of his employment in his capacity as a state DEC employee, and thus under color of state of law, when he allegedly entered Plaintiff's property without permission. In fact, the Amended Complaint specifically states that Bierfeldt was absent from his employment because of a work related injury at the time of the alleged entrance onto Plaintiff's property. Amended Complaint, ¶ 27. Further, the Amended Complaint alleges Bierfeldt's "admitted hatred and animosity" toward Plaintiff, indicating the alleged entry was predicated on a purely personal motivation, not in furtherance of Bierfeldt's official duties. *See* Amended Complaint, ¶ 44. Such statements, which must be taken as true, fail to allege that Bierfeldt's entry was taken under color of state law in his capacity as a DEC employee. As such, the allegations are insufficient as they fail to state a Fourth Amendment violation against Bierfeldt.

■ Additionally, the warrant was not invalid and its procurement and execution do not provide grounds for relief under the Fourth Amendment, as there is no indication that Judge Kelly, District Attorney Himelein or the state police were aware when they obtained the warrant that the information provided by Bierfeldt and Fuhrman was not true. Although a judicial determination of probable cause pursuant to an application for a search warrant is accorded great deference, *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court emphasized in *Leon* that

"the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which the determination was based." *United States v. Reilly,* 76 F.3d 1271, 1280 (2d Cir.1996) (quoting *Leon, supra,* at 914, 104 S.Ct. 3405 and citing *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Evidence seized pursuant to a warrant does not violate the Fourth Amendment even if the warrant lacks probable cause or is technically deficient if the executing officers relied upon it in "objective good faith." *Leon, supra,* at 897, 104 S.Ct. 3405; *United States v. Moore,* 968 F.2d 216, 222 (2d Cir.1992). For the good faith exception to apply, the officers who obtained the warrant must reasonably believe that the warrant was based on a valid application of the law to the known facts. *Reilly, supra,* at 1280. The test for objective good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Moore, supra,* at 222. There can be no reasonable grounds for believing that a warrant was properly issued "[i]f the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon, supra,* at 923, 104 S.Ct. 3405.

In the present case, Plaintiff alleges that the state police applied to Judge Kelly for the warrant authorizing the search of Plaintiff's property accompanied by District Attorney Himelein and Defendants Bierfeldt and Fuhrman. Amended Complaint, ¶ 10. Plaintiff has not alleged that either the state police or Judge Kelly had knowledge of the allegedly false statements by Bierfeldt and Fuhrman during the application process. As such, there is no allegation of fact in the Amended Complaint sufficient to show that the warrant was obtained and executed in violation of the requirements of the Fourth Amendment. There is no allegation that the affiant for the warrant was anyone other than a sworn officers of the law who had authority to obtain a search warrant, and

there is also no allegation that either Bierfeldt or Fuhrman had such authority.

Significantly, in ruling the search warrant granted by Judge Kelly unconstitutional, Judge Ward relied on the differences between Defendant Bierfeldt's testimony before Judge Kelly pursuant to the search warrant application, and his testimony during the criminal trial of Plaintiff. However, under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), as a matter of federal law, a search warrant based on materially false and misleading information is not violative of the Fourth Amendment probable cause requirement unless there is a " 'substantial preliminary showing' that the affiant knowingly or intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and if the allegedly false statement was 'necessary to the finding of probable cause.' " *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir.1991) (quoting *Franks, supra*, at 155–56, 98 S.Ct. 2674). The Second Circuit has held that *Franks* applies to civil rights actions based on Fourth Amendment violations. *See Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir.1990); *Krohn v. United States*, 742 F.2d 24, 26–27 (1st Cir.1984); *Willocks v. Dodenhoff*, 110 F.R.D. 652, 657 (D.Conn.1986).

In the present case, Plaintiff has stated that Judge Ward held the search warrant issued by Judge Kelly unconstitutional based on the substantial difference between Bierfeldt's testimony before Judge Kelly during the application for the search warrant and his testimony during the criminal trial of Plaintiff. Amended Complaint, ¶ 45. However, Plaintiff has made no allegation that the testimony provided by Bierfeldt during the application for the search warrant contained false information as required by *Franks*.

To find a warrant was issued contrary to the Fourth Amendment, *Franks* requires not that information presented by the applicant for a warrant was merely false, but that the applicant knew it was false, or recklessly

disregarded whether it was false. *See Franks, supra*, at 155–156, 98 S.Ct. 2674; *United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir.1997); *Leon, supra*, at 923, 104 S.Ct. 3405. Here, Plaintiff has failed to plead that Bierfeldt or Fuhrman were the affiants for the warrant or that the state police or District Attorney Himelein knew Bierfeldt's statements in the application before Judge Kelly were false or that they recklessly disregarded such alleged falsity. Accordingly, the Plaintiff has failed to state a valid claim that the search warrant was invalid as violative of the Fourth Amendment *See Moore, supra*, at 223 ("in the ordinary case, an officer cannot be expected to question the issuing judge's probable cause determination or his judgement that the form of the warrant is technically sufficient").[9]

**b. Arrest Warrant**

Plaintiff states in his Amended Complaint that "Defendant Fuhrman knew or had reason to know that the commencement of criminal proceedings, the search of plaintiff's residence and plaintiff's subsequent arrest were not supported by probable cause." Amended Complaint, ¶ 36. As Fuhrman is not alleged to have obtained the arrest warrant or to have effected Plaintiff's arrest, Fuhrman's knowledge of a lack of probable cause is not relevant to whether the arresting officers reasonably believed in the existence of sufficient probable cause at the time of Plaintiff's arrest or whether the arrest warrant was properly served under the Fourth Amendment. Further, as discussed, it is not alleged that the arresting officers knew that Bierfeldt had provided the allegedly false testimony before Judge Kelly or the Grand Jury until the criminal trial was commenced, well after the issuance and execution of the arrest warrant. Nor is there any indication in the record that the arresting officers had reason to believe the arrest warrant was not based on sufficient probable cause. As discussed, *supra*, in connection with the search warrant, Plaintiff has also

---

9. As there is no indication Judge Ward purported to apply federal law in reaching his conclusion as to the validity of the search warrant and as federal constitutional principles control on the issue of whether a valid § 1983 claim exists, the allegations concerning Judge Ward's rulings at Plaintiff's trial are legally irrelevant to Plaintiff's claim.

failed to allege the arresting officers did not reasonably believe that probable cause existed for the arrest warrant, and as it is also not alleged Fuhrman obtained or executed the arrest warrant under color of state law, Plaintiff's claim of a Fourth Amendment violation based on his arrest is also insufficient on its face.

### 2. *Fifth Amendment Claim*

 The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law...." The Supreme Court has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws. *See, e.g., Hampton v. Mow Sun Wong,* 426 U.S. 88, 100, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Weinberger v. Wiesenfeld,* 420 U.S. 636 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954). In the present case, it appears Plaintiff has also sought to allege a Fifth Amendment due process claim against several employees of the DEC, a New York state agency. As Plaintiff has alleged no claim involving a federal action, the claim must be dismissed. *Mann v. Meachem,* 929 F.Supp. 622, 632 (N.D.N.Y.1996). Nor does a fair reading of the Amended Complaint reveal any facts upon which Plaintiff could assert that any Defendant, acting under color of state law, violated his right against self-incrimination. Therefore, Plaintiff has failed to assert a valid claim for violation of the Fifth Amendment under § 1983.

### CONCLUSION

Based on the foregoing, Defendants' motion to dismiss (Docket Item No. 34) should be GRANTED against each defendant including John Doe, Mary Doe, Richard Roe, and Susan Roe. Plaintiff's motion to compel discovery (Docket Item No. 47) is DISMISSED as moot. As the undersigned is recommending dismissal of the Amended Complaint, Defendants' Motions for Summary Judgment (Docket Item Nos. 26, 30, 38, and 42) should be DISMISSED as moot.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.